AO 91 (Rev. 01/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| | |
|---|---|
| United States of America<br>v.<br><br>TAKARI ELLIOTT, A/K/A "PAPER"<br>*Defendant* | )<br>)<br>)  Case No. 16-MJ-1175-DLC<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of  7/8/2016  in the county of  Suffolk  in the  _____  District of  Massachusetts , the defendant violated  21  U. S. C. § 841 , an offense described as follows:

knowingly and intentionally distributing cocaine base, a/k/a "crack cocaine," a Schedule II controlled substance

This criminal complaint is based on these facts:
   See attached affidavit of ATF Special Agent Matthew Shibley

Continued on the attached sheet.

_____
*Complainant's signature*

ATF SPECIAL AGENT MATTHEW SHIBLEY
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11/28/2016

_____
*Judge's signature*

City and state:  Boston, Massachusetts

DONALD L. CABELL U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Matthew K Shibley, do hereby depose and say as follows:

1.     I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  I am submitting this affidavit in support of an Application for a Criminal Complaint charging **TAKARI ELLIOTT, a/k/a "PAPER"** with a violation of 21 U.S.C. §841(a)(1), which makes it unlawful for anyone to knowingly and intentionally manufacture, distribute, dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Federal law classifies cocaine, cocaine base, heroin and fentanyl as controlled substances.

2.     I have been employed by ATF for more than 8 years.  I am currently assigned to Boston II Field Office, a group of Special Agents who regularly work with state and local detectives in order to uncover violations of laws specifically related to firearms trafficking, firearms possession by prohibited persons, violent crimes committed with firearms and the use of firearms in furtherance of drug trafficking crimes, in and around Boston. During the course of my law enforcement career, I have written and/or helped prepare numerous affidavits in support of federal and state search and arrest warrants based on violations of the firearms and the narcotics laws, and have participated in the execution of these warrants.  In the course of participating in investigations involving gun and/or drug possession and trafficking, I have conducted or participated in surveillance, the purchase of illegal drugs and firearms, the execution of search warrants, debriefings of subjects, witnesses, and informants and reviews of consensually recorded conversations and meetings.  I have also received training through my position as an ATF Special Agent involving narcotics trafficking.  Through my training, education, and experience, I have

become familiar with the manner in which drug traffickers conduct their illegal drug trafficking activity, including distribution, storage, and transportation of narcotics, the types of records that they generate and their use of cellular telephones to contact drug customers, drug runners, drug associates, and sources of illegal drug supply.

3. The statements contained in this affidavit are based on my own investigation, work done by other agents and investigators from ATF and the Boston Police Department ("BPD"), and by reports and intercepts generated during the investigation. This affidavit is submitted for the limited purpose of establishing probable cause to believe that **TAKARI ELLIOTT, a/k/a "PAPER,"** sold cocaine base to a cooperating witness on July 8, 2016 in violation of 21 U.S.C. § 841(a). It therefore does not set forth all of the information that I and other law enforcement personnel have obtained during the course of this investigation.

## FACTS

4. Beginning in June, 2016, I have participated in operations conducted by the ATF and the BPD's Youth Violence Strike Force targeting drug and gun traffickers operating in and around the area of Hancock and Cameron Streets in the Dorchester section of Boston. The targets in these investigations included individuals associated with area gangs to include the Cameron Street Killas. Over the course of these operations, two cooperating witnesses ("CW-1" and "CW-2") made controlled purchases of crack cocaine, cocaine, fentanyl, and firearms from individuals operating in and around this general area.[1]

---

[1] CW-1 has a limited criminal record which consists of a 2008 conviction for Theft arising out of an incident in which the CW walked out of a restaurant without paying the bill. CW-2 has a history of drug use and has multiple criminal convictions involving drug possession and distribution, theft, as well as crimes of violence and other arrests that did not result in convictions.

5.      During a number of controlled undercover operations, all of which were recorded by covert audio/video equipment, CW-2 made contact with and made purchases from, a heavy set black male who identified himself as "**PAPER**" (but who was later identified as **TAKARI ELLIOTT**), who indicated that he could sell crack cocaine to CW-2. Corroborated by law enforcement officers conducting surveillance during these undercover operations as well as by audio/video recordings, the CWs reported that PAPER drove a white Infiniti vehicle bearing Massachusetts license plate number 4WD525.[2]

6.      On July 6, 2016, immediately following a controlled undercover operation in which CW-2 purchased crack cocaine from "**PAPER**," Detective Bruce Higgins showed CW-2 a Boston Police Booking Photo of **ELLIOTT** and asked if CW-2 recognized the pictured individual. CW-2 positively identified **ELLIOTT** as the "fat guy who just sold me crack" and who the CWs knew as "Paper" or "Fat Boy."

---

CW-1 and CW-2 cooperated with ATF and the BPD solely for monetary compensation and were each paid a total of $4,800 for their work on this investigation. This is in addition to any payments made by BPD or payments for other investigations that have also been conducted by ATF.

[2] **ELLIOTT** has repeatedly been associated with both the White Infinity and its registered owner, MARIA LINA BARBOSA, who made drug deliveries for **ELLIOTT** during the underlying investigation. For instance, at approximately 7:30pm on 6/10/16, MARIA LINA BARBOSA walked into BPD's District C-11 to report that her "ex-boyfriend" **TAKARI ELLIOTT** had taken her car (that BARBOSA described as a white Infinity bearing Mass. Reg. 4WD525). The White Infinity was found parked in the area of Hancock St. and Rill St. and was towed after **ELLIOTT** showed up and stated he did not have the keys. The police report for this incident also indicated that **ELLIOTT** and BARBOSA were arguing on scene. **ELLIOTT** has also been FIO'd by the Boston Police Department while driving the White Infinity on July 6, 2016, July 7, 2017 and, more recently, on November 14, 2016. The latter FIO took place at 20 Howe Street and identified the White Infinity by its new tag number, 5LA725. As with the old number, RMV records list the owner of this vehicle to be BARBOSA. The new plate/number became effective on or about September 20, 2016 when it replaced plate number 4WD525.

7. Two days later, on July 8, 2016, BPD investigators and I participated in another controlled purchase of crack cocaine from **ELLIOTT**. Under the direction of the investigators, CW-2 made telephone contact with **ELLIOTT** at 857-309-8115 (a number **ELLIOTT** provided to CW-2 on June 24 earlier to replace a second number [617-483-2615] that **ELLIOTT** had given out earlier in the investigation) and arranged for a purchase of crack cocaine. **ELLIOTT** instructed CW-2 to meet him on Howe Street.[3]

8. I searched CW-1, as well as CW-1's vehicle, and found no contraband. CW-2 was searched by BPD Officer Lauren Woods, who also found no contraband on CW-2. I then equipped CW-2 with an audio transmitter and a covert audio/video recorder. Detective Bruce Higgins provided CW-2 with pre-recorded BPD buy money. BPD investigators and I then followed as the CWs drove toward Howe Street.

9. The CWs drove up Howe Street where they waited for **ELLIOTT**. Several minutes later, surveillance saw the White Infinity drive up Howe Street. After watching the White Infinity drive past and park near the top of Howe Street, CW-2 exited his/her vehicle, walked to and got in the White Infiniti with **ELLIOTT**. **ELLIOTT** then provided CW-2 with a bag of crack cocaine (approximately 2 grams) in exchange for $200.00 of BPD buy money. CW-2 separated from **ELLIOTT**, walked back to and entered the undercover vehicle with CW-1, and then drove away from the neighborhood. Investigators also saw the White Infinity drive away after the transaction had been completed.

---

[3] CW-2 initially called **ELLIOTT** at 857-309-8115 but got no answer. CW-2 then called another Target to this investigation, who agreed to meet the CW on Howe Street and sell CW-2 an "eight ball" of crack cocaine for $200. Minutes later, however, **ELLIOTT** called CW-2 to inform him/her that he (**ELLIOTT**) would meet the CW on Howe Street instead.

4

10. Myself and other investigators then met with the CWs at a predesignated location. I searched CW-1's person and vehicle, finding no contraband. Officer Woods searched the person of CW-2, also finding no contraband. I took possession of the recording equipment and entered the recordings into evidence at the ATF. BPD Detective Higgins took possession of the drug evidence from CW-2. BPD investigators examined the drug evidence and concluded, based on their collective training and experience, that it was consistent with crack cocaine. On November 18, 2016, this was confirmed by a field test conducted on the drugs purchased from **ELLIOTT** on July 8 using the TruNarc handheld device which test was positive for cocaine base. Further testing will be done at the Massachusetts State Police Lab in Sudbury.

11. I have also reviewed the video recording taken on July 8. It shows that the CW's arrived on 19 Howe Street at approximately 3:15pm. On arrival, they attempted to call **ELLIOTT** but got no answer. Several minute later, **ELLIOTT** called CW-2 to say that he was about to pull up.

12. Approximately 5 minutes later, CW-1 announced that "he" was coming. The video showed a white Infinity driving by and, as the car went past the CW's, CW-1 relayed the license plate "4WD525" to investigators over the KEL (which was memorialized on the video recording). After the Infinity (which as set forth below has repeatedly been associated with **ELLIOTT**) passed by, **ELLIOTT** requested CW-2 to walk up the street to meet him.

13. CW-2 got out of the undercover car and began walking up Howe Street to meet with **ELLIOTT**. CW-2 entered the front passenger door at approximately 3:25pm and immediately wanted to know why **ELLIOTT** was charging CW-2 "200 today?" In response, **ELLIOTT** told the CW that "the dude" (presumably **ELLIOTT**'s supplier) "charged more for the work

5

yesterday" but assured CW-2 that the price would not go higher than $200 and would be between $175 and $200. **ELLIOTT** also said that he would give CW-2 a better deal if he/she bought 2 eight balls of crack instead, telling him/her, "No bullshit, the more the better, you be help me out." The video also contains shots of **ELLIOTT**'s face and the buy money going over to **ELLIOTT**.

14. As CW-2 got out of the White Infinity after completing the deal, she/he asked **ELLIOTT** "what happened over there" (apparently referencing a recent nearby shooting scene). **ELLIOTT** responded by telling CW-2, "Someone got killed…. its summertime, you know." CW-2 then remarked on the number of guns on the street and asked **ELLIOTT** if he could get CW-2 one. CW-2 explained that he/she wanted a .22 caliber handgun and would be willing to pay $400 for it. **ELLIOTT** said, "If I find one, I'll let you know."[4] CW then walked back down Howe Street, met back up with CW-1, and together they drove back to meet with me and the other investigators.

15. I have reviewed still shots taken from the July 8 video and compared them with booking photos for **ELLIOTT**. Having done so, I am confident that the person who sold crack cocaine to CW-2 in the White Infinity on July 8, 2016 was **TAKARI ELLIOTT**.

## CONCLUSION

16. Based on the foregoing, I submit that there is probable cause to believe that, on or about July 8, 2016, **TAKARI ELLIOTT, A/K/A "PAPER,"** did distribute an amount of

---

4  No gun sale was ever made.

cocaine base, a/k/a "crack cocaine" in violation of Title 21, United States Code, Section 841(a).

SPECIAL AGENT MATTHEW SHIBLEY
BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES

Subscribed and sworn to
before me, this 26th day
of November, 2016.

DONALD L. CABELL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

7